[No. 33088.   Department Two.   February 14, 1955.]

THE STATE OF WASHINGTON, *on the Relation of J. G. Dungan et al., Plaintiff,* v. THE SUPERIOR COURT FOR GRANT COUNTY, *Richard B. Ott, Judge, Respondent.*[1]

[1]Reported in 279 P. (2d) 918.

*Southard & Palmer,* for relators.

*John W. Baird,* for respondent.

DONWORTH, J.—In this case, we are called upon to review an order adjudicating a public use entered in a condemnation proceeding instituted by a third class city for the purpose of acquiring a right of way thirty feet in width for a pipeline as an addition to its municipal water system. The defendants' demurrer to the petition was overruled. A hearing was had on the petition, which resulted in the entry of an order adjudicating that the contemplated use of the property by the city is a public use. The defendants sought and obtained a writ of review in this court.

The parcel of land over which the city of Ephrata seeks to acquire this easement is presently the subject of an executory contract of sale. The relators are the vendors named in the contract and *one* of four vendees. The pipeline will connect with its municipal water system a well owned by the city and located without the corporate limits. The

land comprising the site of this well was conveyed to the city in 1952 by the vendors and all the vendees by a deed containing no restriction which is here material. At that time, one of the relators was the city attorney and another was mayor of Ephrata.

Three of the vendees holding an undivided four-fifths interest in the contract voluntarily granted to the city, for a nominal consideration, an easement for the identical right of way which is being condemned in this proceeding. The relators, being the vendors and the remaining vendee holding an undivided one-fifth interest therein, declined the city's request for an easement over this route, but, instead, offered the city an easement for a different route (herein referred to as the alternate route). Upon the advice of its engineer, the city refused to acquire the alternate route offered by relators and instituted this condemnation proceeding to obtain the route it desired.

Relators recognize that in condemnation proceedings brought by cities the court is bound by the legislative determination of the city council that the taking or damaging of certain land is necessary for the contemplated project. *State ex rel. Church v. Superior Court,* 40 Wn. (2d) 90, 240 P. (2d) 1208, and cases cited; *Tacoma v. Cavanaugh,* 45 Wn. (2d) 500, 275 P. (2d) 933.

However, they urge that in this case the legislative determination of necessity is not binding because the cost of acquiring and utilizing the right of way along the route selected by the city as compared to the cost that would be involved in connection with the right of way along the alternate route offered by them is so great as to indicate that the legislative authority of the city acted in an arbitrary and capricious manner in selecting its route. It is argued that the evidence presented was sufficient to warrant the trial court in finding that either such actual or constructive fraud existed as would vitiate the whole proceeding. Therefore relators assert that the entry of the order adjudicating public use constituted reversible error.

The evidence produced by relators relating to the issue of fraud on the part of the city in condemning this easement

consisted of two kinds: (a) testimony of relators that, when the well site was conveyed to the city in 1952, there was an oral promise by the then city water and sewer superintendent that the pipeline would be constructed over the alternate route, and thus the city was guilty of actual fraud in repudiating this promise and seeking to condemn this easement; and (b) that the cost of acquiring the right of way over the route now sought by the city, plus the cost of constructing and maintaining the pipeline thereon, would be so exorbitant as to show that the city council acted arbitrarily and capriciously in selecting this route (constructive fraud).

As to the claim of actual fraud, relators were city officials at the time the alleged promise was made by the city water and sewer superintendent. Relators must be presumed to have known that they dealt at their peril when contracting with a city official, as an agent of the city, without first ascertaining his authority to so contract. *Arnott v. Spokane,* 6 Wash. 442, 33 Pac. 1063, and *Paul v. Seattle,* 40 Wash. 294, 82 Pac. 601. Furthermore, being city officials, they are presumed to have known that they could not enter into a contract with the city in regard to a matter in which they had a personal interest by dealing with another city official (RCW 35.24.170). Since there was no restrictive condition in the deed conveying the well site to the city as to the location of the pipeline and no ordinance committing the city to locate the pipeline along the alternate route, there was, in any event, no competent proof of any actual fraud on the part of the city.

On the issue of constructive fraud, the trial court made the following finding of fact in its order adjudicating a public use:

"That from the testimony adduced at the hearing, and from an inspection by the Court of the land sought to be condemned by the City of Ephrata and adjoining land of the defendants, it appears to the court that the land sought to be condemned by the Plaintiff is the only feasible route whereby the city can utilize its well located on city property in conjunction with its municipal water system. It further

appears to the court that the taking and condemning of the said land by the City of Ephrata is not unduly harmful or detrimental to the defendants or to the adjoining land owned by the defendants. It further appears that the alternate route proposed by the defendants is not practical nor advisable from the standpoint of the City of Ephrata by reason of increased and additional cost of construction and maintenance of the proposed installation."

The evidence does not preponderate against this finding, and so we must hold that no constructive fraud has been proven by relators in respect to the city's selection of its proposed route for the pipeline. Therefore, under the general rule referred to above, the court is bound by the legislative determination of necessity. *State ex rel. Church v. Superior Court, supra.*

■ The ultimate question before the trial court was whether the contemplated use for which the right of way was being acquired by the city was really a public use. Under Art. I, § 16, of our constitution, as amended by amendment 9, this question is a judicial question.

In the present case, the record shows that the city council, on March 8, 1952, adopted a plan and system ordinance (No. 355) providing for the construction and installation of certain additions and improvements to, and extension of, its combined water and sewerage system. The material portion of section I of this ordinance provides:

"The following described plan and system of additions and improvements to and extension of the combined water and sewerage system of the city if hereby proposed, specified, and adopted to wit:   .   .   .

"5. The city shall construct a well on a 1-acre site in the SW¼ of the SW¼ of the NW¼ of Section 21, Township 21 North, Range 26 East W.M., shall construct a pump house adjacent thereto, acquire a turbine pump and install the same in said pump house with all necessary controls and appurtenances for the operation of the same. Or, if an adequate supply of water is not found, then on a site to be later selected by the city in a location West of the city.

"6. The city shall install a pipe line of adequate capacity from the well described in subparagraph 5 above across an easement and along a County Road right-of-way described as follows:

Beginning at the well site in the NE¼ of the SW¼ of the NW¼ of Section 21, Township 21 North, Range 26 East W.M., and thence across the SW¼ of the NW¼ and the NW¼ of the SW¼, and the NE¼ of the SW¼, all in Section 21, Township 21 North, Range 26 East W.M. to Primary State Highway No. 7,

and connect the same to the 6″ city line now existing on said Primary State Highway No. 7. Or, in the event a new well site is selected as outlined in subparagraph 5 above, then a new right-of-way easement shall be obtained to connect the well with the city water system.

"The city shall acquire any and all property, easements, right-of-way, franchises and water rights which may be found necessary to carry out said plan of additions and improvements to and extensions of its combined water and sewerage system, which plan is all as more particularly set forth in maps, plans and specifications prepared by Parker, Hill & Ingman, consulting engineers, Seattle, Washington, and now on file in the office of the City Clerk.

"It is hereby further provided the above described plan shall be subject to such additions or changes as to details or other changes not affecting the main general plan or plans as hereinbefore set forth as shall be authorized by the City Council, either prior to or during the course of actual construction."

The pipeline described in subparagraph 6 above is the same pipeline for which the city is seeking a right of way in this proceeding as authorized by the condemnation ordinance (No. 430).

■ It seems plain that the contemplated use for which the city is seeking to acquire the right of way across relators' land, to wit, to construct and maintain a pipeline to carry water from an existing well to connect with the city's combined water and sewer system, is really a public use within the meaning of Art. I, § 16, of the constitution (as amended). The trial court could not have arrived at any other answer to this judicial question.

■ Relators also assign error in the court's overruling their demurrer to the petition. In their brief, they set forth six particulars in which the petition is claimed to be defective. However, the record indicates that only one alleged defect was called to the attention of the trial court, to wit, that

the source from which the compensation is to be paid to the land owner, as provided in section V of the condemnation ordinance (No. 430), was not the general fund of the city as required by RCW 8.12.040. The trial court correctly held that section V complied with the statute because, while the compensation was payable out of the water and sewer fund, there was a further provision that, if this fund were insufficient, payment should be made "from the general funds of the City of Ephrata."

██ The other claimed defects in the petition, not having been presented to the trial court in argument on the demurrer, cannot be considered in this court. There was no error in overruling the demurrer.

Much of the testimony in this case related to land values, costs of construction and maintenance of the pipeline, severance damages, and other matters which normally relate to the just compensation to be made to the land owners by reason of the city's acquiring this easement. Nothing said herein is intended to intimate any opinion as to these matters or will have any bearing on that issue when this case goes to trial before a jury to fix the just compensation. All that we are reviewing now is the single question whether the trial court erred in holding that the contemplated use of the land by the city is in reality a public use.

On the record before us, the city was plainly entitled to an order adjudicating that the contemplated use to which it proposed to put the right of way over relators' land was really a public use, and the trial court's order which we are reviewing is hereby affirmed.

SCHWELLENBACH, HILL, and WEAVER, JJ., concur.